# UNITED STATES DISTRICT COURT
# DISTRICT OF IDAHO

| | |
|---|---|
| HAP TAYLOR & SONS, INC. d/b/a KNIFE RIVER, an Oregon corporation doing business as Knife River,<br><br>    Plaintiffs,<br><br>vs.<br><br>DENNIS KROMANN and IRMA KROMANN, husband and wife, WILLIAM H. WEAVER, PE/LS, individually; and ALL PERSONS IN POSSESSION OR CLAIMING ANY RIGHT TO POSSESSION,<br><br>    Defendants. | Case No.: CV 08-00449-EJL-REB<br><br><br><br>**REPORT AND RECOMMENDATION RE: MOTION FOR SUMMARY JUDGMENT**<br><br>**(Docket No. 26)** |
| WILLIAM H. WEAVER, PE/LS, individually<br><br>    Counterplaintiff,<br><br>vs.<br><br>HAP TAYLOR & SONS, INC. d/b/a KNIFE RIVER, an Oregon corporation doing business as Knife River,<br><br>    Counterdefendant. | |
| WILLIAM H. WEAVER, PE/LS, individually,<br><br>    Cross-Claimant,<br><br>vs.<br><br>DENNIS KROMANN and IRMA KROMANN, husband and wife, and DOES I-X, whose true names are unknown representing ALL PERSONS IN POSSESSION OR CLAIMING ANY RIGHT TO POSSESSION<br><br>    Cross-Defendants | |

**Report and Recommendation - 1**

| | |
|---|---|
| WILLIAM H. WEAVER, PE/LS, individually, <br><br> Third-Party Plaintiff, <br><br> vs. <br><br>ANB FINANCIAL N.A., a national association; PIONEER TITLE COMPANY OF ADA COUNTY, an Idaho corporation; NORTHWEST TRUSTEE SERVICES, INC., an Idaho corporation, <br><br> Third-Party Defendant | |

Currently pending before the Court is Third-Party Defendant Federal Deposit Insurance Corporation's ("FDIC") Motion for Summary Judgment (Docket No. 26). Having carefully reviewed the record, participated in oral argument, and otherwise being fully advised, the Court enters the following Report and Recommendation:

## I. BACKGROUND

FDIC argues that Third-Party Plaintiff William H. Weaver's ("Weaver") claims against it are time-barred under 12 U.S.C. § 1821(d)(6)(B). Because FDIC's arguments are driven by statutory deadlines, anchored to specific occurrences on dates certain, the factual background will be presented in stark, chronological format for the benefit of both the parties and the Court. To the parties' credit, the underlying facts relevant to FDIC's Motion for Summary Judgment are largely undisputed.

 1. On December 28, 2006, Defendants Dennis and Irma Kromann made, executed, and delivered to Third-Party Defendant ANB Financial, N.A. ("ANB Financial") a Deed of Trust, securing a loan on real property. *See* FDIC's U.F. No. 2 (Docket No. 27).

**Report and Recommendation - 2**

2. On March 6, 2008, Plaintiff Hap Taylor and Sons, Inc. d/b/a Knife River ("Knife River") filed a mechanic's lien on the property (*see id.* at U.F. No. 3); on April 8, 2008, Weaver also filed a Claim of Lien against the property (*see id.*).

3. On May 9, 2008, FDIC was appointed as Receiver for ANB Financial, taking charge of the latter's assets and affairs. *See id.* at U.F. No. 4.

4. On August 12, 2008, Knife River filed the instant action (in state court) to foreclose on its lien. *See* Compl. for Foreclosure of Claim of Lien (Docket No. 1, Att. 3).

5. On September 3, 2008, Weaver filed his Answer, Counterclaim, Cross-Claim, and Third-Party Complaint (also in state court), requesting that Knife River's lien was and is junior to his lien. *See* Answer, Countercl., Cross-cl., and Third-Party Compl. (Docket No. 1, Att. 10).

6. In letters dated October 8, 2008, FDIC notified Weaver and his counsel, William Smith, that Weaver may have a claim against ANB Financial, inviting Weaver to submit a Proof of Claim to FDIC on or before January 6, 2009. *See* Exs. A & B to Aff. of William L. Smith ("Smith Aff.") (Docket No. 30, Atts. 1 & 2).

7. In a letter dated October 17, 2008, Weaver (through his attorney, William Smith) sent a Proof of Claim to FDIC. *See* Ex. A to Aff. of Donna Teague ("Teague Aff.") (Docket No. 29, Att. 1). Within those sections requesting the claimant's signature and contact information, the Proof of Claim contained (1) Smith's signature (identifying him as "Attorney"), (2) Smith's law firm, "Smith Law, P.A.", and (3) Smith Law, P.A.'s address and telephone number. *See id.* Mr. Smith's letter and attachments were delivered to FDIC (or at least Dallas, Texas) on October 27, 2008. *See* Exs. C & D to Smith Aff. (Docket No. 30, Atts. 3 & 4).[1]

---

[1] The Court notes that the Proof of Claim itself has a "date stamp" of November 2, 2008 at 2:36 p.m. *See* Ex. A to Teague Aff. (Docket No. 29, Att. 1).

**Report and Recommendation - 3**

8. After removal to this Court, on October 27, 2008, FDIC moved to stay the action (Docket No. 4). On December 15, 2008, U.S. District Judge Edward J. Lodge granted FDIC's motion, ordering:

> The proceedings in the above-entitled cause are STAYED up to and including the earlier of: (a) 180 days from the date of Plaintiff's filing of claim with FDIC-R; or (b) 10 days from the date FDIC-R has tendered a final written determination upon the Plaintiff's claim. Upon such occurrence, the FDIC-R shall file a motion and proposed order seeking to lift the stay or for other appropriate relief in this matter.

*See* 12/15/08 Order (Docket No. 15) (capitalization in original).

9. In a February 2, 2009 Status Report, FDIC's counsel requested "the continued stay of this matter until the earlier of April 15, 2009, one hundred and eighty (180) days from the filing of Mr. Weaver's claim, or ten (10) days after the FDIC-R has tendered a final determination upon the claim." *See* 2/2/09 Status Report (Docket No. 16).

10. In a February 23, 2009 letter, FDIC determined to disallow Weaver's claim because it "has not been proven to the satisfaction of [FDIC]." *See* Ex. B to Teague Aff. (Docket No. 29, Att. 2). The "Notice of Disallowance of Claim" further stated:

> Pursuant to 12 U.S.C. Section 1821(d)(6), if you do not agree with this disallowance, you have the right to file a lawsuit on your claim (or continue any lawsuit commenced before the appointment of the Receiver) . . . within 60 days from the date of this notice.
>
> **IF YOU DO NOT FILE A LAWSUIT** (or continue any lawsuit commenced before the appointment of the Receiver) **BEFORE THE END OF THE 60-DAY PERIOD, THE DISALLOWANCE WILL BE FINAL, YOUR CLAIM WILL BE FOREVER BARRED AND YOU WILL HAVE NO FURTHER RIGHTS OR REMEDIES WITH RESPECT TO YOUR CLAIM. 12 U.S.C. SECTION 1821(d)(6)(B).**

*See id*. (emphasis and capitalization in original).

**Report and Recommendation - 4**

11. Consistent with Weaver's Proof of Claim, the February 23, 2009 correspondence was addressed to Weaver and sent to Smith Law, P.A.'s address at 5987 W. State Street, Boise, Idaho 83703-5056. *See id.*

12. In early March 2009, Smith Law P.A. (now known as Smith Horras, P.A.) moved from its 5987 W. State Street location to 5561 N. Glenwood Street, Suite B, Boise Idaho 83714. *See* Smith Aff. at ¶ 5 (Docket No. 30).[2]

13. According to the "Return Receipt," the February 23, 2009 letter was delivered to John Wills on March 10, 2009; although a section is designated for such information, the "Return Receipt" does not indicate whether the delivery address (that is, John Wills' address) is different from Weaver's address (that is, Smith Law, P.A.'s address). *See* Ex. B to Teague Aff. (Docket No. 29, Att. 2). Still, it seems that the letter was delivered at 7:10 a.m. on March 10, 2009 in Dallas, Texas. *See* Ex. F to Smith Aff. (Docket No. 30, Att. 6).

14. On June 2, 2009, Weaver's counsel sent an e-mail to, among others, FDIC's then-counsel, C. Edward Cather, and FDIC's current counsel, Terry Copple, pointing out:

> The stay in this matter has by its terms expired (six months from the filing of my client's claim with the FDIC or ten days after the final determination is tendered). To date, my office has not received a final determination from the FDIC. The purpose of this email is twofold: first, to confirm with FDIC counsel that no determination has been tendered by the FDIC; and second, to confirm whether you will be opposing a motion for relief from the pending stay. Please advise at your first convenience.

*See* Ex. G to Smith Aff. (Docket No. 30, Att. 7).

---

[2] Weaver's counsel claims that "we submitted postage forwarding forms to the United States Postal Service prior to our move on March 1, 2009, effective March 1, 2009." *See* Smith Aff. at ¶ 6 (Docket No. 30). While there is no reason to believe otherwise, it should be pointed out that, in the Court's mind, it is unclear why a letter addressed to William Weaver (and not William Smith, Smith Law, P.A., or Smith Horras, P.A.) at 5987 W. State Street would ever be forwarded to the N. Glenwood Street location.

**Report and Recommendation - 5**

15. Later that day, Mr. Cather responded to Mr. Smith's inquiry, stating in a separate e-mail that:

> We have not received a determination on the claim and have no information to suggest that a determination was completed by the FDIC.
>
> As long as the litigation is commenced within the proper time limits, I do not anticipate that the FDIC will oppose a motion to lift the stay.

*See id.* Mr. Cather's email was also sent to, among others, Mr. Copple. *See id.* According to Mr. Smith, Mr. Copple never responded to his June 2, 2009 e-mail. *See* Smith Aff. at ¶ 12 (Docket No. 30).

16. On June 19, 2009, Weaver moved to lift the stay. *See* Mot. for Relief from Stay (Docket No. 17). On July 14, 2009, Judge Lodge granted the unopposed motion, ordering that the stay be lifted "and this matter shall hereafter proceed forward to determination." *See* 7/14/09 Order (Docket No. 19).

17. On September 16, 2009, Mr. Cather's law firm, Moffatt, Thomas, Barrett, Rock & Fields, Chtd., moved to withdraw as FDIC's counsel because "FDIC-R has tendered the defense of this matter, Terry C. Copple of the firm Davison Copple, Copple & Copple has filed a notice of appearance and Mr. Copple now represents the FDIC-R's interest in this matter." *See* Mot. for Leave to Withdraw (Docket No. 21).

18. Also on September 16, 2009, Mr. Copple wrote a letter to all counsel, enclosing therewith a copy of the February 23, 2009 Notice of Disallowance of Claim. *See* Ex. E to Smith Aff. (Docket No. 30, att. 5). According to Mr. Smith, "September 16, 2009 was the first that me or any of Mr. Weaver's representatives received notice that Mr. Weaver's claim had been disallowed by the FDIC." *See* Smith Aff. at ¶ 7 (Docket No. 30).

**Report and Recommendation - 6**

19. On October 23, 2009, FDIC filed the at-issue Motion for Summary Judgment. *See* Mot. for Summ. J. (Docket No. 26).

In support of its Motion, FDIC argues that 12 U.S.C. § 1821(d)(6)(A)(ii) requires Weaver to request judicial review, file suit thereon, or continue a previous action within 60 days of FDIC's February 23, 2009 Notice of Disallowance of Claim. *See* Mem. in Supp. of Mot. for Summ. J., p. 4 (Docket No. 28). According to FDIC, Weaver's alleged failure to so preserve his claim within the 60-day time frame warrants its dismissal here. *See id*. at pp. 4-5 ("Over sixty (60) days have elapsed since the foregoing determination and Mr. Weaver has not made any effort to request judicial review, file suit, or continue the action. As such, he is time barred under 12 U.S.C. § 1821(d)(6)(B) from pursuing the instant matter.") (emphasis in original).

Weaver naturally disagrees, arguing that (1) he need not perform an affirmative act to continue the existing lawsuit in light of Judge Lodge's pending stay; (2) any limitations period did not begin to run until September 16, 2009 - the date his counsel actually received the February 23, 2009 Notice of Disallowance of Claim; and, alternatively, (3) any earlier limitations period was equitably tolled in light of the June 2, 2009 e-mail correspondence, where FDIC's counsel indicated that FDIC had not completed any determination on Weaver's Proof of Claim, notwithstanding the February 23, 2009 Notice of Disallowance of Claim. *See* Opp. to Mot. for Summ. J., pp. 4-13 (Docket No. 34).

## II. REPORT

### A. Summary Judgment Standard of Review

One of the principal purposes of summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool [ ] by which factually

**Report and Recommendation - 7**

insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *See id*. At 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issues of material fact." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The evidence must be viewed in the light most favorable to the non-moving party and the Court must not make credibility findings. *See id*. Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *See McLaughlin v. Liu*, 849 F.2d 1205 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *See Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in his favor. *See id*. at 256-57. The non-moving party must go beyond the pleadings and show "by [his] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *See Celotex*, 477 U.S. at 324.

**B.     FDIC's February 23, 2009 Notice of Disallowance and 12 U.S.C. § 1821(d)(6)(A)(ii)'s 60-day Limitations Period**

Neither FDIC nor Weaver disputes that 12 U.S.C. § 1821(d)(6)(A) outlines a limitations period for seeking agency review or judicial determination of claims. *See* Mem. in Supp. of

**Report and Recommendation - 8**

Mot. for Summ. J., pp. 9-10 (Docket No. 28) (citing *Laurenzano v. Crossland Savings Bank*, 837 F. Supp. 514, 516 (E.D.N.Y. 1993)); *see also* Opp. to Mot. for Summ. J., p. 7 (Docket No. 34) (same). According to that section:

> (A) In general
>
> Before the end of the 60-day period beginning on the earlier of –
>
> (i) the end of the period described in paragraph (5)(A)(i)[3] with respect to any claim against a depository institution for which the Corporation is receiver; or
>
> (ii) the date of any notice of disallowance of such claim pursuant to 5(A)(i),
>
> the claimant may request review of the claim . . . or file suit of such claim (or continue an action commenced before the appointment of the receiver) . . . .

*See* 12 U.S.C. § 1821(d)(6)(A). Not acting within the above-referenced 60 days results in a disallowance of the claim. *See id*. at § 1821(d)(6)(B) (if claimant fails to request administrative review, file suit, or continue action before end of 60-day period, "the claim shall be deemed to be disallowed . . . as of the end of such period, such disallowance shall be final, and the claimant shall have no further rights or remedies with respect to such claim.").

---

[3] 12 U.S.C. § 1821(d)(5)(A)(i) reads:

> Before the end of the 180-day period beginning on the date any claim against a depository institution is filed with the Corporation as receiver, the Corporation shall determine whether to allow or disallow the claim and shall notify the claimant of any determination with respect to such claim.

Therefore, 12 U.S.C. § 1821(d)(5)(A)(i) defines the time period (180 days) within which FDIC must consider and allow/disallow a Proof of Claim.

**Report and Recommendation - 9**

Although there is no disagreement concerning the law to be applied here, any consistency between FDIC's and Weaver's arguments evaporates when attempting to apply the undisputed facts to the above-referenced statutory framework. That is, FDIC claims that Weaver had until April 24, 2009 - 60 days from the February 23, 2009 Notice of Disallowance - to seek agency review or judicial determination of his claim and, in failing to do so, his claim is now forever barred. In response, Weaver counters that the date of the Notice of Disallowance is immaterial, particularly when considering he and his attorney first saw the Notice of Disallowance on September 16, 2009 - *after* Weaver himself moved the Court to lift the stay imposed in the underlying action. Thus, this Court is tasked with deciphering the phrase, "the date of any notice of disallowance," as those words are used in 12 U.S.C. § 1821(d)(6)(A)(ii). Does that term mean the actual date on FDIC's Notice of Disallowance (February 23, 2009), or does it mean the date Weaver received that same Notice of Disallowance (September 16, 2009)?

Unfortunately, the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA") - the sponsoring Act here - does not define when "notice" occurs.[4] As a result, answering such a question is a matter of statutory interpretation. "The purpose of statutory construction is to discern the intent of Congress in enacting a particular statute." *See*

---

[4] The Court notes that 12 U.S.C. § 1821(d)(5)(A)(iii) provides:

> Mailing of notice sufficient. The requirements of clause (I) [*see supra* at p. 9, fn. 3] shall be deemed to be satisfied if the notice of any determination with respect to any claim is mailed to the last address of the claimant . . . .

While this section appears to permit FDIC to notify a claimant via mail, it offers no assistance as to *when* notice is actually accomplished - specifically, when the 60-day period, pursuant to 12 U.S.C. § 1821(d)(6)(A), begins to run. *See* Opp. to Mot. for Summ. J., p. 8 (citing *Laurenzano*, 837 F. Supp. at 516).

**Report and Recommendation - 10**

*United States v. Daas*, 198 F.3d 1167, 1174 (9th Cir. 1999). Congress's intent begins with "the plain meaning of the language in question." *See United States v. 144,774 Pounds of Blue King Crab*, 410 F.3d 1131, 1134 (9th Cir. 2005). If the relevant language is plain and unambiguous, the inquiry ends. *See United States v. Carter*, 421 F.3d 909, 911 (9th Cir. 2005). To discern the text's plain meaning, "words will be interpreted as taking their ordinary, contemporary, common meaning." *See id*. (internal quotation marks omitted).

Alas, in the context before the Court, there is no understood meaning of "notice" - the operative word here. This is evident in the case law cited by the parties on this very issue. For example, Weaver points out that, in *Laurenzano*, the United States District Court for the Eastern District of New York commented:

> [FIRREA] does not define whether "notice" means actual notice or the letter giving notice. . . . . It would be absurd to read "the date of any notice" to be the date on a notice and not the date it is received. Congress could hardly have provided that the F.D.I.C. could print a notice and not mail it for 60 days and thus comply with the notice requirement. Such a reading would prevent a claimant from receiving actual prior notice and filing suit. . . . . The F.D.I.C. may be entitled to an inference that claimants receive notice after the F.D.I.C. mails it. But here the date of receipt is not disputed. This court holds that the 60 days runs from the date of receipt of notice.

*See* Opp. to Mot. for Summ. J., pp. 8-9 (Docket No. 34) (citing *Laurenzano*, 837 F. Supp. at 516-17 (internal citations omitted)). Weaver predictably argues that it would be similarly absurd to read "the date of any notice" to be the date on the February 23, 2009 Notice of Disallowance, "especially considering the undisputed evidence that the Notice of Disallowance was not received by Mr. Weaver or his counsel until September 16, 2009." *See id*. at p. 9

In contrast, FDIC argues that correspondence properly mailed and addressed is presumed to have been received - even when the addressee states otherwise. *See* Reply Mem. in Supp. of

**Report and Recommendation - 11**

Mot. for Summ. J., p. 5 (Docket No. 36) (citing *American Surety v. Blake*, 54 Idaho 1, 27 P.2d 972 (1933)). More consistent with the factual situation here (where FDIC sends notice to a claimant's attorney's since-vacated office address), FDIC finds support in *McLaughlin v. Federal Deposit Insurance Corporation*, 796 F. Supp. 47 (D. Mass. 1992). *See* Reply Mem. in Supp. of Mot. for Summ. J., p. 7, fn. 3 (Docket No. 36). There, the District Court for the District of Massachusetts discussed the notice requirement within 12 U.S.C. § 1821(d)(3)(C)[5], stating in no uncertain terms:

> In addition, the FDIC must mail individual notices to all claimants informing them of the deadline for presenting claims. Notably, however, this latter provision does not require the FDIC to ensure that claimants actually receive the mailed notice; it simply requires the FDIC to mail the notice to any claimant at the claimant's last address appearing in the institution's records.
>
> . . . .
>
> And, as mentioned previously, § 1821(d)(3)(C) only requires the FDIC to mail the notice to the claimant's last address appearing in the failed institution's records. The statute does not burden the FDIC with the task of making an independent investigation into the claimant's current address.

*See McLaughlin*, 796 F. Supp. at 49. In turn, FDIC argues that its Notice of Disallowance "comported perfectly" with the statutory notice requirements. *See* Reply Mem. in Supp. of Mot. for Summ. J., pp. 6 & 7 (Docket No. 36) ("The FDIC sent the Notice of Disallowance to the exact address at which the foregoing notice should have been sent. By all accounts, the FDIC

---

[5] The "notice" requirement of 12 U.S.C. § 1821(d)(3)(C) relates to notice to a depository institution's creditors of possible claims (*see* 12 U.S.C. § 1821(d)(3)(B)), an issue not present here. *See, e.g.*, *supra* at p. 3, ¶ 6. Still, the district court's handling of the *actual* vs. *constructive* notice debate in *McLaughlin* is instructive to this Court's consideration of FDIC's Motion for Summary Judgment.

**Report and Recommendation - 12**

acted in strict compliance with congressional directive and due process . . . ."). On this discrete point, Weaver is unable to offer much in his defense, particularly when considering that the Notice of Disallowance was sent to the address listed on Weaver's Proof of Claim.[6] Rhetorically speaking, then, what else was FDIC to do?[7]

The Court, however, need not answer that question, highlighting, instead, the presumption of delivery raised by the placing of a letter into the United States mails relied upon in the FDIC's briefing (*see* Reply Mem. in Supp. of Mot. for Summ. J., pp. 5-6 (Docket No. 36)). Such a presumption of receipt is, however, rebuttable. Had the Notice of Disallowance actually been *delivered* to Weaver's attorney's old address (regardless of any claims to the contrary), FDIC would have legitimately been entitled to an inference that Weaver received it. That is not what happened. Here, it appears undisputed that the Notice of Disallowance was ultimately delivered to Dallas, Texas and not to Weaver himself or to his attorney's new or old addresses in Boise, Idaho. *See* Ex. F to Smith Aff. (Docket No. 30, Att. 6).[8] Indeed, although there was no

---

[6] FIRREA's notification requirement is satisfied if a Notice of Disallowance is mailed to the last address of the claimant which appears "in the claim filed by the claimant" or "in documents submitted in proof of the claim." *See* 12 U.S.C. §§ 1821(d)(5)(A)(iii)(ii), (iii).

[7] Actually, as discussed during oral argument, FDIC could have avoided this situation by also listing Mr. Weaver's attorney's name and/or law firm on the Notice of Disallowance correspondence.

[8] Curiously, FDIC unequivocally states that the "Notice of Disallowance was sent to, signed for, and actually received by an individual at 5987 W. State St., Boise, Idaho, 83706-5056 on March 10, 2009." *See* Reply Mem. in Supp. of Mot. for Summ. J., p. 5 (Docket No. 36) (emphasis in original). However, there is no evidence that the individual who signed for the Notice of Disallowance, John Wills, did so in Boise, Idaho and not Dallas, Texas. *See* Ex. B to Teague Aff. (Docket No. 29, Att. 2). In fact, the opposite appears true when accounting for the Notice of Disallowance's tracking information. *See* Ex. F to Smith Aff. (Docket No. 30, Att. 6).

**Report and Recommendation - 13**

statutory requirement to do so, FDIC sent its own Notice of Disallowance *via certified mail, return receipt requested*, emphasizing FDIC's appropriate desire to have the Notice of Disallowance *actually* received - not just sent. See Ex. B to Teague Aff. (Docket No. 29, Att. 2). In this case, the corresponding certified mail receipt (*see id.*), coupled with the letter's tracking information (*see* Ex. F to Smith Aff. (Docket No. 30, Att. 6)), confirm that the Notice of Disallowance was never delivered to Boise, Idaho and, therefore, altogether incapable of being received by Mr. Weaver or his attorney. In other words, the record proves that neither Mr. Weaver nor his attorney received the Notice of Disallowance until well after February 23, 2009 - a situation that sets this action apart from FDIC's cited cases.[9]

At there very least, these realities operate to create an issue of fact as to whether the presumption of delivery is rebutted, if not rebutted outright. Because it is at least arguable that Weaver did not receive actual notice of FDIC's Notice of Disallowance until September 16, 2009 (*see* Smith Aff. at ¶ 7), it cannot be said as a matter of law that Weaver's claim is barred by the unknown passing of a 60-day limitations period in the meantime.[10] FDIC's Motion for Summary Judgment should be denied on this issue.

---

[9] For example, in *Robson v. Resolution Trust Corporation*, 1994 WL 874231 (D.S.C. 1994), the plaintiff admitted to receiving the Notice, but asserted that the limitations period was waived. *See id.* at *3. In *Guglielmi v. Federal Deposit Insurance Corporation*, 863 F. Supp. 54 (D. R.I. 1994), there was a question as to whether the third-party defendants' counsel actually received the notice mailed to him. *See id.* at 58. Similarly, in *McLaughlin v. F.D.I.C.*, 796 F. Supp. 47 (D. Mass. 1992), the claimant and his attorney declared that they did not receive FDIC's mailed notice. *See id.* at 48. Here, while FDIC should not be tasked with ensuring that its correspondence reaches an intended recipient, there is no issue (unlike the above-cited cases) concerning whether Mr. Weaver or his attorney, Mr. Smith, received FDIC's February 23, 2009 Notice of Disallowance - the record proves that they did not. Given such an occurrence, any presumption of receipt cannot logically exist.

[10] This is particularly so, when, on June 2, 2009, FDIC's own counsel stated in an e-mail that FDIC had not made any determination on Weaver's claim. *See* Ex. G to Smith Aff. (Docket No. 30, Att. 7).

C.  **Weaver's Proof of Claim and 12 U.S.C. § 1821(d)(6)(A)(i)'s 240-day Limitations Period**

Notwithstanding the 60-day limitations period following FDIC's Notice of Disallowance (*see supra* at pp. 8-14), FIRREA contains an alternate (whichever occurs first) limitations period, requiring Weaver to file a lawsuit (or continue a previous lawsuit) within 240 days of filing his Proof of Claim. *See* 12 U.S.C. § 1821(d)(6)(A)(i). In this respect, FDIC argues that Weaver not only failed to undertake the requisite "affirmative action" to continue the existing lawsuit, but, regardless, failed to do so within the above-referenced 240-day time period. *See* Reply Mem. in Supp. of Mot. for Summ. J., pp. 7-8 (Docket No. 36). Both arguments are without merit.

1.  The Effect of the Court's December 15, 2008 Stay on the 240-Day Limitations Period

FDIC claims that 12 U.S.C. § 1821(d)(6)(A) requires Weaver to engage in an "affirmative action" to continue the underlying action in order to satisfy the 240-day limitations period. *See* Mem. in Supp. of Mot. for Summ. J., p. 10 (Docket No. 28) ("With regard to the action necessary to constitute continuance of 'an action commenced before the appointment of the receiver,' case law and legislative history indicate that affirmative action, e.g., submission of a formal motion to renew, is required."). Weaver disagrees, countering that an affirmative act is not needed when a lawsuit is already pending; specifically, Weaver argues that the Court's December 15, 2008 Stay (Docket No. 15) necessarily obviates the need for any separate, affirmative act to continue that same lawsuit. *See* Opp. to Mot. for Summ. J., pp. 4-7 (Docket No. 34).

FDIC's focus on the sort of action needed to renew a claim under 12 U.S.C. § 1821(d)(6) (*see* Mem. in Supp. of Mot. for Summ. J., pp. 11-12) misses the point, particularly when

**Report and Recommendation - 15**

recognizing the existence of an already pending (but stayed) action. Here, there is no question that the underlying action was stayed until July 14, 2009. *See* 7/14/09 Order (Docket No. 19). Yet, FDIC argues that, despite the stay,[11] Weaver was obligated to venture forward with a motion to renew. *See* Reply in Supp. of Mot. for Summ. J., p. 8 (Docket No. 36) ("No motion to renew has been filed - merely a Motion for Relief from Stay, the substance of which has nothing to do with continuing a claim. Accordingly, having failed to file a motion to renew, Mr. Weaver's claims against the FDIC is barred."). FDIC's argument ignores the practical effect of a stayed action.

A "stay," by definition, temporarily suspends all or part of a judicial proceeding. *See* Blacks Law Dictionary (8th ed. 2004) (defining "stay" as "[t]he postponement or halting of a proceeding, judgment, or the like."). During the pendency of a court-imposed stay, it is difficult to see any need/place for some affirmative act which would, in essence, undermine the very nature and purpose of that same stay - as would a motion to renew under these circumstances. *See, e.g.*, *Aguilar v. F.D.I.C.*, 63 F.3d 1059, 1062 (11th Cir. 1995) ("[N]othing in the statute explicitly provides the FDIC with the additional benefit of requiring a claimant to take additional affirmative steps to let the FDIC and the federal court know the claimant is serious about its preexisting (but temporarily suspended) lawsuit; filing a lawsuit is enough to signal seriousness and to protect a claim so long as the claimant does not fail to participate in the action once the court-ordered stay expires. . . . . When a court enters a definite stay (as in this case, a 180-day stay), the case becomes active when the stay expires."). In other words, what is the point?

---

[11] A stay which, by its terms, could only be lifted by FDIC, which the Court specifically required. *See* 12/15/08 Order (Docket No. 15) ("Upon such occurrence, the FDIC-R shall file a motion and proposed order seeking to lift the stay or for other appropriate relief in this matter.").

**Report and Recommendation - 16**

Here, the December 15, 2008 stay's (1) fixed duration and (2) specific direction for FDIC (not Weaver) to lift the stay upon the administrative procedures' exhaustion understandably limits what Weaver could have done to continue, through an affirmative act, the pending action. In short, Weaver should not have been required to continue - however such an affirmative act is defined - the pending action during the stay.[12] To find otherwise would amount to a clipping of the stay's wings - something this Court is reluctant to recommend.

2. <u>Weaver's June 19, 2009 Efforts to Lift the Stay and the 240-Day Limitations Period</u>

Even if Judge Lodge's December 15, 2008 stay is disregarded and Weaver is required to perform some act in the interim to continue his claims, the Court is not convinced that only a motion to renew will satisfy such a requirement. To the extent FDIC argues as much, the Court disagrees. While there is no question that a motion to renew indicates a claimant's intent to continue a pending claim, the Court sees no logical reason why a motion to lift a stay - like

---

[12] FDIC's reliance on *First Union Nat'l Bank v. North Beach Prof'l Office Complex, Inc.*, 841 F. Supp. 399 (M.D. Fla 1993), and *First Nat'l Bank of Florida v. Royal Trust Tower, LTD.*, 827 F. Supp. 1564 (S.D. Fla 1993) is not persuasive. *See* Mem. in Supp. of Mot. for Summ. J., pp. 11-12 (Docket No. 28); *see also* Reply in Supp. of Mot. for Summ. J., pp. 9-10 (Docket No. 36). In *First Union*, the U.S. District Court for the Middle District of Florida did not discuss the effect of an action's pending stay on a claimant's simultaneous effort to continue a claim under FIRREA. While a stay was in place to allow the defendant to pursue its counterclaims through the administrative process, the gist of *First Union* dealt with whether settlement negotiations during the limitations period either estopped any untimeliness argument or, alternatively, constituted "continu[ing] an action" under 12 U.S.C. § 1821(d)(6)(A)(ii). *See First Union*, 841 F. Supp. at 401-405. Again, in *First National*, the U.S. District Court for the Southern District of Florida did not address the interplay between a pending stay and a claimant's obligation to continue a claim; instead, there, the stay had already been lifted and the question addressed by the district court spoke to whether any affirmative conduct was needed to continue a claim. *See First Nat'l*, 827 F. Supp. at 1567. Moreover, in *First National*, the imposed stay's terms expressly allowed the counterclaimant's to lift the stay (*see id*. at 1565-66) - a situation not present here.

**Report and Recommendation - 17**

Weaver's June 19, 2009 Motion for Relief from Stay (Docket No. 17) - cannot likewise exhibit a claimant's similar intent; indeed, that is the very purpose of lifting a stay (especially when recognizing that (1) it was FDIC's obligation to lift the stay, not Weaver's; (2) Weaver sought permission from all parties to lift the stay (*see* Ex. G to Smith Aff. (Docket No. 30, Att. 7)); and (3) his Motion for Relief from Stay was unopposed). In this respect, then, Weaver's June 19, 2009 Motion for Relief from Stay satisfies FIRREA's requirement for a claimant to continue an already-instituted action. However, there is some question as to whether Weaver's efforts to lift the stay took place within the 240-day limitations period.

FDIC argues that Weaver filed his Proof of Claim on October 17, 2008 - the date referenced on Weaver's counsel's cover letter, attaching Weaver's Proof of Claim. *See* Mem. in Supp. of Mot. for Summ. J., p. 6 (Docket No. 28); *see also* Ex. A to Teague Aff. (Docket No. 29, Att. 1). Weaver disagrees, arguing that he filed his Proof of Claim on October 27, 2008 - the date FDIC received the Proof of Claim. *See* Stmt. of Disputed and Undisputed Facts, pp. 1-2 (Docket No. 35); *see also* Exs. C & D to Smith Aff. (Docket No. 30, Atts. 3 & 4). Applying the 240-day limitations period to the two dates reveals either (1) a June 14, 2009 deadline or (2) a June 24, 2009 deadline. These potential deadlines straddle Weaver's June 19, 2009 Motion for Relief from Stay.

As with the term "notice" (*see supra* at p. 10), FIRREA does not define what it means to "file" a claim, as that term is used within 12 U.S.C. § 1821(d)(5)(A)(i). Here, Weaver submitted his Proof of Claim on October 17, 2008, but it wasn't until October 27, 2008 that FDIC received Weaver's Proof of Claim. Without more direction (and the parties provide none in their respective briefing), either event could conceivably be interpreted as amounting to the filing of

**Report and Recommendation - 18**

Weaver's Proof of Claim - from which FDIC then had 180 days to allow/disallow the claim. The Court considers FDIC's receipt of Weaver's Proof of Claim to amount to its filing.

First, within FDIC's October 8, 2008 correspondence notifying Weaver and his counsel that Weaver may have a claim against ANB Financial, FDIC itself implied that the 180-day limitations period (and, hence, the combined 240-day limitations period) began upon its receipt of Weaver's Proof of Claim. *See* Exs. A & B to Smith Aff. (Docket No. 30, Atts. 1 & 2) ("After the Receiver receives your claim, the Receiver has up to 180 days to review and determine whether to allow or disallow your claim."). Such a reading of the statute makes inherent sense and is consistent with a plain reading/understanding of the term "file"; any other way, FDIC would not know when its 180-day period to act began and, therefore, ended.

Second, while not binding on this Court, the United States District Court for the Eastern District of Pennsylvania addressed this same issue (albeit in a different context), concluding that FDIC's receipt of a proof of claim constituted its filing. *See Campbell v. F.D.I.C.*, 1994 WL 475067 (E.D. Pa. 1994) (unpublished). There, in discussing 12 U.S.C. § 1821(d)(5)(A)(i) and subject-matter jurisdiction under FIRREA, the district court considered the action premature when applying the timing protocol associated with an underlying claim's administrative review, finding:

> The court finds it does not have jurisdiction to hear either plaintiffs Campbell or Voth's actions. The court finds that plaintiff Voth's filing in the instant case was untimely, because she filed suit before the 180 day period expired. The court also finds plaintiff Campbell's filing untimely. Section 1821(d)(5)(A)(i) provides that the 180 day clock starts ticking on the date any claim "is filed." Mailing is not equivalent to filing. The date the FDIC received plaintiff Campbell's proof of claim is the date that Campbell filed his claim with the FDIC. Because the FDIC did not receive plaintiff Campbell's Proof

> of Claim until January 29, 1993, the action he commenced on July 23, 1993 was premature. This court has no jurisdiction to hear his claims.

*See Campbell*, 1994 WL 475067 at *4. This same rationale will apply here. Weaver filed his Proof of Claim no earlier than October 27, 2008 - the date FDIC received Weaver's Proof of Claim.

Because Weaver filed his Proof of Claim on October 27, 2008, his June 19, 2009 Motion for Relief from Stay was submitted before the end of the 240-day limitations period - June 24, 2009. As a result, even when ignoring the December 15, 2008 stay, Weaver sufficiently continued the underlying action via his June 19, 2009 Motion for Relief from Stay within the applicable statute of limitations.

### III. RECOMMENDATION

Based upon the foregoing, it is HEREBY RECOMMENDED that Third-Party Defendant FDIC's Motion for Summary Judgment (Docket No. 26) be DENIED.

IT IS SO ORDERED

DATED: **August 4, 2010**

Honorable Ronald E. Bush
U. S. Magistrate Judge